UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

RICHMOND DIVISION

| | |
|---|---|
| WILMA OVERTON, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>ATLANTIC UNION BANK,<br><br>    Defendant. | Civil Action No. 3:23cv24 _____ |

**CLASS ACTION COMPLAINT**

Plaintiff Wilma Overton, individually and on behalf of all others similarly situated, complains and alleges as follows based on personal knowledge as to herself, on the investigation of her counsel, and on information and belief as to all other matters:

**INTRODUCTION**

1. This is a civil action seeking monetary damages, restitution and injunctive and declaratory relief from Defendant Atlantic Union Bank ("Atlantic Union" or "Defendant"), arising from the assessment and collection of overdraft fees ("OD Fees") on a positive balance as shown on Plaintiff's account statements.

2. Atlantic Union's customers have been injured by Atlantic Union's improper practices to the tune of millions of dollars bilked from their accounts in violation of their agreements with Atlantic Union.

3. On behalf of herself and the Class, Plaintiff brings claims for breach of contract and the covenant of good faith and fair dealing, and seeks damages, restitution, and injunctive relief for Atlantic Union's violations as set forth more fully below.

1

## JURISDICTION

4. This Court has original jurisdiction over this putative class action lawsuit pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d)(2) & (6), because the aggregate sum of the claims of the members of each of the putative classes exceeds $5 million, exclusive of interest and costs, because Plaintiff brings this action on behalf of proposed classes that are each comprised of over one hundred members, and because at least one of the members of each of the proposed classes is a citizen of a different state than Atlantic Union.

## PARTIES

5. Plaintiff is a citizen and resident of North Carolina. Plaintiff has a checking account with Atlantic Union.

6. Defendant Atlantic Union is a bank with approximately $17 billion in assets. Atlantic Union is one of the largest banks based in Virginia. Atlantic Union is headquartered in Richmond, VA and maintains branch locations across the Commonwealth of Virginia, Maryland and North Carolina.

7. At least one of the members of the proposed classes is a citizen of a state other than the Commonwealth of Virginia.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

8. Overdraft fees and insufficient funds fees ("NSF fees") are among the primary fee generators for banks. According to a banking industry market research company, Moebs Services, in 2018 alone, banks generated an estimated $34.5 billion from overdraft fees. *Overdraft Revenue Inches Up in 2018*, https://bit.ly/3cbHNKV.

9. Unfortunately, the customers who are assessed these fees are the most vulnerable customers. Younger, lower-income, and non-white accountholders are among those who were more likely to be assessed overdraft fees. *Overdrawn: Consumer Experiences with Overdraft*, Pew Charitable Trusts 8 (June 2014), https://bit.ly/3ksKD0I.

10. Because of this, industry leaders like Bank of America, Capital One, Wells Fargo, Alliant, and Ally have made plans to end the assessment of OD or NSF fees entirely. *See* Hugh

2

Son, *Capital One to Drop Overdraft Fees for All Retail Banking Customers*, NBC News (Dec. 1, 2021), https://nbcnews.to/3DKSu2R; Paul R. La Monica, *Wells Fargo Ends Bounced Check Fees*, CNN (Jan. 12, 2022), https://bit.ly/3iTAN9k.

11. In addition, the CFPB recently found that Regions Bank "acted unfairly and abusively" in violation of the Consumer Financial Protection Act of 2010 by assessing assessment of certain OD Fees. *See* https://www.consumerfinance.gov/enforcement/actions/regions-bank_2022/.

12. In line with this industry trend, the New York Attorney General recently asked other industry leading banks to end the assessment of all OD Fees by the summer of 2022. *NY Attorney General asks banks to end overdraft fees*, Elizabeth Dilts Marshall, Reuters (April 6, 2022).

13. In addition, the New York Department of Financial Services recently issued guidance stating in no uncertain terms that it expects institutions who charge certain overdraft fees to "discontinue the practice." *See* Industry Letter: Avoiding Improper Practices Related to Overdraft and Non-Sufficient Funds Fees (Jul. 12, 2022), *available at* https://www.dfs.ny.gov/industry_guidance/industry_letters/il20220712_overdraft_nsf_fee.

14. Through the imposition of these fees, Defendant has made substantial revenue to the tune of tens of millions of dollars, seeking to turn its customers' financial struggles into revenue.

**I. DEFENDANT ASSESSES OD FEES ON TRANSACTIONS THAT DO NOT OVERDRAW THE ACCOUNT**

A. The Contract

15. The Contract states:

You understand that we may, at our discretion, honor withdrawal requests that overdraw your account.

Ex. A at 3.

> If an item is presented without sufficient funds in your account to pay it, we may, at our discretion, pay the item (creating an overdraft) or return the item (resulting in a NSF).

*Id*. at 7.

16. In breach of these promises, Defendant assesses $38 OD Fees, one of the highest OD Fees in the nation, when there are "sufficient funds" in the account to "honor" or "pay" the transaction as demonstrated by Defendant's own bank statements.

### B. Plaintiff's Transactions

17. On or around August 24, 2021, August 30, 2021 and September 23, 2021, Defendant charged Plaintiff a $38 OD Fee on a purchase, even though, according to Defendant's own account statements, the balance in the account was positive when the fee was assessed.

## II. NONE OF THESE FEES WERE ERRORS.

18. The improper fees charged by Defendant to Plaintiff's accounts were not errors by Defendant, but rather were intentional charges made by Defendant as part of its standard processing of transactions.

19. Plaintiff therefore had no duty to report the fees as errors because they were not; instead, they were part of the systematic and intentional assessment of fees according to Defendant's standard practices.

20. Moreover, any such reporting would have been futile as Defendant's own contract admits that Defendant made a decision to charge the fees.

## III. THE IMPOSITION OF THESE IMPROPER FEES BREACHES DEFENDANT'S DUTY OF GOOD FAITH AND FAIR DEALING

21. Parties to a contract are required not only to adhere to the express conditions of the contract but also to act in good faith when they are invested with a discretionary power over the

other party. This creates an implied duty to act in accordance with accountholders' reasonable expectations and means that the bank or credit union is prohibited from exercising its discretion to enrich itself and gouge its customers. Indeed, the bank or credit union has a duty to honor transaction requests in a way that is fair to its customers and is prohibited from exercising its discretion to pile on even greater penalties on its accountholders.

22. Here—in the adhesion agreements Defendant foisted on Plaintiff and its other customers—Defendant has provided itself numerous discretionary powers affecting customers' accounts. But instead of exercising that discretion in good faith and consistent with consumers' reasonable expectations, Defendant abuses that discretion to take money out of consumers' accounts without their permission and contrary to their reasonable expectations that they will not be charged improper fees.

23. Defendant abuses its discretion in its own favor—and to the prejudice of Plaintiff and its other customers—when it assesses fees in this manner. By always assessing these fees to the prejudice of Plaintiff and other customers, Defendant breaches their reasonable expectations and, in doing so, violates its duty to act in good faith. This is a breach of Defendant's implied covenant to engage in fair dealing and to act in good faith.

24. It was bad faith and totally outside Plaintiff'' reasonable expectations for Defendant to use its discretion in this way.

25. When Defendant charges improper fees in this way, Defendant uses its discretion to interpret the meaning of key terms in an unreasonable way that violates common sense and reasonable consumers' expectations. Defendant uses its contractual discretion to set the meaning of those terms to choose a meaning that directly causes more fees.

I. **CLASS ACTION ALLEGATIONS**

26. Plaintiff brings this action on behalf of herself and on behalf of all others similarly situated pursuant to F.R.C.P. 23. The Class is defined as:

> All persons who hold a Atlantic Union checking account who, within the applicable statute of limitations preceding the filing of this lawsuit, were charged OD Fees and/or NSF Fees on items that did not overdraw the balance as shown on Atlantic Union's bank statements (the "Class").

27. Excluded from the Class are individuals who file a request for exclusion, governmental entities, Defendant, its parents, directors, officers, attorneys, and members of their immediate families, and the Court and persons within the third degree of relationship to the Court.

28. The Class consists of thousands of members, such that joinder of all Class members is impracticable.

29. There are questions of law and fact that are common to all members of the Class that relate to Defendant's OD Fee practice.

30. The claims of Plaintiff are typical of the claims of the proposed Class because they are based on the same legal theories, and Plaintiff has no interests that are antagonistic to the interests of the members of the Class.

31. Plaintiff is an adequate representative of the Class and has retained competent legal counsel experienced in class actions and complex litigation that will fairly and adequately protect the interests of the Class.

32. The class action is an appropriate method for the fair and efficient adjudication of the controversy.

33. The questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class, particularly because the focus of the litigation will be on Defendant's conduct. The predominant questions of law and fact in this litigation include, but are not limited to, whether Defendant:

- Imposed OD and/or NSF Fees on transactions that did not overdraw the balance shown on Defendant's account statements;

- Breached its contract with Plaintiff and members of the Class by assessing OD Fees and/or NSF Fees on transactions that did not overdraw the account balance as shown on Defendant's account statements; and

- Breached the covenant of good faith and fair dealing imposed on it.

34.     Other questions of law and fact common to the Class include the proper method or methods by which to measure damages.

35.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy, as the pursuit of hundreds of individual lawsuits would not be economically feasible for individual Class members, and certification as a class action will preserve judicial resources by allowing the common issues of the Class members to be adjudicated in a single forum, avoiding the need for duplicative hearings and discovery in individual actions that are based on an identical set of facts. Since the amount of each individual Class member's claim is small relative to the complexity of the litigation, and due to the financial resources of Defendant, no Class member could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the Class members will continue to suffer losses and Defendant's misconduct will proceed without remedy. In addition, without a class action, it is likely that many members of the Class will remain unaware of Defendant's conduct and the claims they may possess.

36.     It appears that other persons who fall within the definitions of the Class set forth above are not pursuing similar litigation, such that individual Class members do not wish to control the prosecution of separate actions.

37.     This proposed class action does not present any unique management difficulties.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### BREACH OF CONTRACT INCLUDING THE COVENANT OF GOOD FAITH AND FAIR DEALING
**(Individually and on Behalf of the Class)**

38. Plaintiff repeats and incorporates by reference the preceding paragraphs.

39. Plaintiff and all members of the proposed Class contracted with Atlantic Union for checking account services as set forth in the Contract. *See* Ex. A.

40. All contracts entered into by Plaintiff and the Class are identical or substantively identical because Atlantic Union's form contracts were used uniformly.

41. Atlantic Union breached the express terms of its own contracts as described herein.

42. Plaintiff and members of the Class have performed all, or substantially all, of the obligations imposed on them under the agreements.

43. Under the laws of the states and the Commonwealth where Atlantic Union does business, good faith is an element of every contract. All contracts impose upon each party a duty of good faith and fair dealing. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms, especially where one party has unequal bargaining power as Atlantic Union does here, constitute examples of bad faith in the performance of contracts. Plaintiff and all members of the proposed Class have performed all, or substantially all, of the obligations imposed on them under the contract.

44. Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or may consist of

inaction, and fair dealing may require more than honesty. Examples of bad faith are evasion of the spirit of the bargain and abuse of a power to specify terms.

45. Atlantic Union abused the discretion it granted to itself when it charged OD Fees or NSF Fees in the manner described herein.

46. In these and other ways, Atlantic Union violated its duty of good faith and fair dealing.

47. Atlantic Union willfully engaged in the foregoing conduct for the purpose of (1) gaining unwarranted contractual and legal advantages; and (2) unfairly and unconscionably maximizing fee revenue from Plaintiff and other members of the Class.

48. Plaintiff and members of the Class have sustained damages as a result of Atlantic Union's breaches of the parties' contracts and breaches of contract through violations of the covenant of good faith and fair dealing.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Class, demands a jury trial on all claims so triable and judgment as follows:

A. Certification for this matter to proceed as a class action on behalf of both proposed Class under Fed. R. Civ. P. 23(b)(2) and 23(b)(3);

B. Declaring Atlantic Union's OD Fee and NSF Fees policies and practices to be wrongful, unfair and unconscionable in light of its contractual promises;

C. Restitution of all OD Fees and NSF Fees paid to Atlantic Union by Plaintiff and the members of the Class, as a result of the wrongs alleged herein in an amount to be determined at trial;

D. Actual damages in an amount according to proof;

E. Injunctive or declaratory relief;

F. Pre- and post-judgment interest at the maximum rate permitted by applicable law;

G. Costs and disbursements assessed by Plaintiff in connection with this action, including reasonable attorneys' fees pursuant to applicable law;

H. For attorneys' fees under the common fund doctrine, and all other applicable law; and

I. Such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of herself and the Class, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all claims so triable.

Dated: January 10, 2023

Respectfully submitted,

/s/ Devon J. Munro
Devon J. Munro
**MUNRO BYRD, P.C.**
120 Day Ave. SW, First Floor
Roanoke, Virginia 24016
Firm: (540) 283-9343
Direct: (540) 283-9889
Fax: (540) 328-9290
dmunro@trialsva.com

Lynn A. Toops*
**COHEN & MALAD, LLP**
One Indiana Square
Suite 1400
Indianapolis, IN 46204
Tel: (317) 636-6481
ltoops@cohenandmalad.com

J. Gerard Stranch, IV*
**BRANSTETTER, STRANCH**
**& JENNINGS, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel: (615) 254-8801
gerards@bsjfirm.com

Christopher D. Jennings*
**THE JOHNSON FIRM**
610 President Clinton Ave Suite 300
Little Rock, AR 72201
Tel: (501) 372-1300
chris@yourattorney.com

*Pro Hac Vice Applications Forthcoming

*Counsel for Plaintiff and the Proposed Class*